# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| Danielle L. Norris, ) | Civil Action No. 5:18-cv-02815-JMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Andrew M. Saul, *Commissioner of Social* ) | |
| *Security Administration*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This action arises from Plaintiff Danielle Lashaun Norris' application to the Social Security Administration seeking Supplemental Security Income ("SSI") under the Social Security Act ("the Act"), 42 U.S.C. 405(g) (2019). The matter before the court is a review of the Magistrate Judge's Report and Recommendation ("Report") recommending that the court affirm the decision of the Commissioner of Social Security Administration ("the Commissioner"). (ECF No. 23 (citing ECF No. 11-2 at 14–24).) For the reasons stated below, the court **ACCEPTS** the Report (ECF No. 23), and **AFFIRMS** the Commissioner's final decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Report sets forth the relevant facts and legal standards which this court incorporates herein without a full recitation. (ECF No. 23 at 1–7.) At the time of her alleged onset date of November 10, 2015, Plaintiff was 31 years old and living in Spartanburg, South Carolina. (ECF No. 11-6 at 1–12.) According to her initial Disability Report, Plaintiff completed the 12th grade and also completed specialized job training, trade, or vocational school at a work training center in May 2014. (*Id.*) Plaintiff's past relevant work experience includes production line temp agency, packer and inspector at various temp agencies, and restaurant cook. (*Id.*) She claims that she

1

stopped working in July 2014 because she suffers from seizures caused by juvenile myoclonic epilepsy, joint pain, finger pain, and iritis. (*Id.* at 6.)

On November 18, 2015, Plaintiff filed an application for SSI, alleging a disability onset date of November 10, 2015. (ECF No. 11-5 at 1–10.) In her SSI application, Plaintiff noted that "(e)pilepsy seizures limit my job performance. It's a devastating disease [and] [I] never know when it will strike again, when or where and how many times. It mess[es] with the brain and my body . . . I lose myself in every way. I am young and never had a good life. [I] always fear. I cannot say enough about this disease. No surgery can fix me. It can quickly cause death. I really want my own life and to be able to work. I tried." (ECF No. 11-6 at 21.) Her application was denied initially and upon reconsideration. (ECF No. 11-2 at 14, 30.)

In May 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (ECF No. 11-4 at 21.) A hearing to determine whether Plaintiff qualified as disabled under Section 1614(a)(3)(A) of the Act was held on December 8, 2017.[1] (ECF No. 11-2 at 30–54). Plaintiff testified that she could not work because she "was diagnosed with lupus and it's hard for me to focus, hard for me to do anything. My legs hurt, my arms hurt, my back hurt. I really can't do nothing now." (ECF No. 11-2 at 32–33.) Moreover, she testified that the medication she takes for lupus only works "sometimes" and gives her "complications," such as chest pain, pain in her leg and arm, feeling stiff, and being unable to concentrate. (*Id.* at 34.) The ALJ asked how that kept her from working and Plaintiff stated that she is asleep most of the time, and that sleeping was the only thing that helped her pain. (*Id.* at 34–35.) However, she claimed that she has "problems

---

[1] "Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (ECF No. 11-2 at 17.)

2

sleeping due to the stiffness in [her] joints and it hurts so bad." (*Id.* at 35.) Furthermore, Plaintiff suffers from Sjogren's syndrome, which causes light sensitivity and vision problems in her right eye, but not her left eye. (*Id.* at 38.) Plaintiff testified that she "[b]asically sit[s] at home and hurt[s]" and that she does not "do too much of nothing" except watch TV. (*Id.* at 40.)

On March 15, 2018, the ALJ issued an "Unfavorable Decision" regarding Plaintiff's SSI application, finding that:

> The claimant has not engaged in substantial gainful activity since November 10, 2015, the application date (20 C.F.R. § 416.971 *et seq*.).
>
> The claimant has the following severe impairments: systemic lupus erythematosus; sicca syndrome, chronic iritis; seizure disorder; and obesity (20 C.F.R. § 416.920(c)).
>
> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926).
>
> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c) except she can never climb ladders, ropes, or scaffolds; never work around hazards; and her right eye fine and gross visual acuity is "limited" to "frequent." The claimant has no past relevant work (20 C.F.R. § 416.965).
>
> The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964).
>
> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969, 416.969(a)).
>
> The claimant has not been under a disability, as defined in the Social Security Act, since November 10, 2015, the date the application was filed (20 C.F.R. § 416.920(g)).
>
> Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. § 416.968).
>
> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969, 416.969(a)).

> The claimant has not been under a disability, as defined in the Social Security Act, since November 10, 2015, the date the application was filed (20 C.F.R. § 416.920(g)).

(ECF No. 11-2 at 14.)

On April 13, 2018, Plaintiff filed a Request for Review with the Appeals Council, but the Appeals Council denied her request on September 24, 2018, (*Id.* at 2–5), which rendered the ALJ's decision the final decision of the Commissioner. (ECF No. 11-2 at 2–4.) On October 17, 2018, Plaintiff filed a Complaint against the Commissioner seeking a reversal of the Commissioner's final decision and an award of a period of disability with disability insurance benefits in accordance with the Act. (ECF No. 1.) The Commissioner filed the Social Security Administrative Record on February 21, 2019. (ECF No. 11.) Plaintiff filed a brief on April 17, 2019 (ECF No. 17.) On May 20, 2019, the Commissioner filed a brief (ECF No. 19), to which Plaintiff filed a Response on May 31, 2019. (ECF No. 20.) The Magistrate Judge issued her Report on November 20, 2019, recommending that the court affirm Commissioner's final decision. (ECF No. 23.) Plaintiff timely filed objections to the Report on December 5, 2019. (ECF No. 24.) The Commissioner filed a Reply on December 27, 2019. (ECF No. 27.)

## II. LEGAL STANDARD

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court, and the recommendation has no presumptive weight. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The responsibility to make a final determination remains with the court. *Id.* at 271. As such, the court is charged with making de novo determinations of those portions of the Report and Recommendation to which specific objections are made. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). In the absence of specific objections to the

Magistrate Judge's Report, the court is not required to give any explanation for adopting the Report. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Rather, "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). Furthermore, a failure to file specific, written objections to the Report results in a party's waiver of the right to appeal from the judgment of the court based upon such recommendation. 28 U.S.C. § 636(b)(1). Thus, the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

### III. DISCUSSION

A. Plaintiff's First Objection

The Report recommends "a finding that substantial evidence supports the ALJ's consideration of [Nurse Practitioner] Herbert's and Dr. Bounds' opinions." (ECF No. 23 at 16 (citing *Austin v. Colvin*, No. 0:11-CV-02768- DCN, 2013 WL 1181952, at *4–5 (D.S.C. Mar. 21, 2013) (overruling Plaintiff's objections because "the ALJ explained the reasons for the weight given to [the nurse's] opinion and the court can 'follow the [ALJ's] reasoning.'")).)

Plaintiff objects to the Report and asserts that "[t]he Magistrate Judge did not properly apply the strongly held 'Treating Physician Rule' of the Fourth Circuit Court of Appeals in evaluating the opinions of Nurse Practitioner Leah Herbert and Dr. Charles Bounds. (ECF No. 24 at 1.) The Commissioner contends that "the treating physician rule is not absolute" and that the Magistrate Judge correctly determined the record contains substantial evidence for the ALJ's decision. (ECF No. 27 at 1, 4.)

5

In comparing the medical records provided by Plaintiff with the evidence in the record, the Magistrate Judge concluded that Plaintiff's challenge to the ALJ's decision be dismissed because "[t]he ALJ met her statutory and regulatory obligation to assess all of the evidence in the record. This court may not reweigh the evidence or substitute its own judgment for the Commissioner's, even if it finds the evidence is susceptible to more than one rational interpretation." (ECF No. 23 at 20 (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).) Moreover, she notes that "[if] there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed 'even should the court disagree with such decision.'" (ECF No. 23 at 10 (citing *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)).) The Magistrate Judge also states that "the opinions of treating physicians are entitled to greater weight than other evidence and the regulations have enumerated particular factors for ALJs to consider when evaluating those opinions." (*Id.* at 11 (citing 20 C.F.R. § 416.927(c)).) "If a treating source's medical opinion is 'well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight' . . . However, 'the rule does not require that the testimony be given controlling weight." (*Id.* (citing 20 C.F.R. § 416.927(c)(2); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curium); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence)).) "The ALJ has the discretion to give less weight to the opinion of a treating physician when there is 'persuasive contrary evidence.'" (*Id.* (citing *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)).)

Here, the Report provides that "NP Herbert provided Plaintiff with a two-sentence letter dated April 28, 2017 addressed 'To Whom It May Concern' that stated: 'Ms. Danielle Norris is a

6

patient here at ReGenesis. This letter is to certify that she cannot work due to medical condition of seizure disorder and autoimmune disease.'" (*Id.* at 12 (citing ECF No. 11-9 at 44).)[2] The ALJ gave NP Herbert's opinion "little weight" because:

> Ms. Herbert did not provide any functional assessment of the claimant's abilities, nor did she provide any objective support for her opinion. Additionally, her opinion is not supported by the treatment records throughout the file that reflect no seizure activity since November 2015, no significant limitations due to her autoimmune disorders, and essentially normal physical examinations.

(ECF No. 11-2 at 22.)

As to Dr. Bounds, the ALJ gave "little weight" to his opinion for the following reasons:

> I also give little weight to Dr. Bounds' opinion . . . Dr. Bounds noted that his assessment only covered the period from March 2017 until November 2017. Further, he does not answer the question of whether the claimant could perform sedentary work, nor does he provide any objective support for the limitations he assessed. Additionally, Dr. Bounds' own treatment records reflect functioning well beyond the limitations assessed in this opinion form, as does the other treatment records and objective medical evidence throughout the file.

(*Id.*)

Furthermore, the ALJ found that some of Plaintiff's medical records are not "actual medical reports," but are instead patient information sheets:

> You have records that do not appear to be medical records and instead appear to be discharge information sheets . . . It is just a list of syndromes diagnosed in February of 2017 . . . is an [Emergency Room] visit for knee pain, but it's not a medical record. It's just a patient instruction sheet . . . March of 2017 is when you started seeing the doctor for your medical source opinion statement. But these are patient instructions. They're not actual medical. Like all of what you have is what you get at the end of the visit. They're not actual medical records for the visit[.]

---

[2] The Magistrate Judge observes that "although the regulations have since been revised, at the time Plaintiff filed her claim, NP Herbert was not considered an acceptable medical source and the ALJ was not bound by her opinions on matters reserved to the Commissioner. The regulations were revised effective October 15, 2018 such that nurse practitioners will be considered acceptable medical sources for claims filed on or after March 27, 2017. 20 C.F.R. § 416.902. Because Plaintiff's application was filed before that date, Ms. Herbert is not considered an acceptable medical source." (ECF No. 23 at 15.)

7

(ECF No. 11-2 at 36 (citations omitted).)

"When, as here, an ALJ denies a claimant's application, the ALJ must state 'specific reasons for the weight given to the treating source's medical opinion,' to enable reviewing bodies to identify clearly the reasons for the ALJ's decision." *Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016). "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' [] or has failed to give a sufficient reason for the weight afforded a particular opinion." (ECF No. 23 at 16 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992); 20 C.F.R. § 416.927(c)).) The court agrees that "[h]ere, as required by SSR 96-2p, the ALJ's decision contained specific reasons for the weight given to NP Herbert's and Dr. Bounds' opinions—lack of objective support and inconsistency with their own treatment records and other medical evidence of record." (ECF No. 23 at 16 (citing ECF No. 11-2 at 22–23).) Accordingly, the court finds that the Magistrate Judge did not err in applying the "Treating Physician Rule" by accepting the ALJ's justification for giving "little weight" to NP Herbert and Dr. Bounds.

B. Plaintiff's Second Objection

The Magistrate Judge found that "the ALJ considered the entire record, and substantial evidence supports her RFC determination. As required by 20 C.F.R. § 416.945, the ALJ considered and addressed Plaintiff's ability to meet the demands of medium-level work. (ECF No. 23 at 23 (citing ECF No. 11-22 at 19–23).) Specifically, "[t]he ALJ's analysis of the evidence provides a logical bridge between the evidence and her RFC findings." (*Id.* (citing *Bennett v. Astrue*, No. 1:10-CV-1931-RMG, 2011 WL 2470070, at \*3 (finding the ALJ's RFC assessment consistent with the regulations and "that the ALJ's opinion sufficiently explained how he determined Plaintiff's RFC as well as his rejection of [the treating physician's] opinion.").)

Plaintiff objects to the Magistrate Judge's determination that "the record supported the finding of the ALJ that [Plaintiff] could perform medium work. Medium work requires a worker to lift and carry 50 pounds for up to 1/3 of the 8-hour workday. The evidence of record, including the medical records and [medical] opinions . . . do not support a finding that [Plaintiff] could perform the physical demands of medium work." (ECF No. 24 at 2.) The Commissioner asserts that "substantial evidence supported the ALJ's [Residual Functional Capacity][3] assessment for range of work at the medium exertional level" and claims that the Magistrate Judge "correctly found that 'the ALJ noted that in making this RFC finding she 'considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSR 16-3p." (ECF No. 27 at 4 (citing ECF No. 23 at 22).)

The court finds that the record contains substantial evidence to support the ALJ's RFC assessment. "An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work." (ECF No. 23 at 22 (citing 20 C.F.R. §§ 416.945(a)(3), (4)) Here, the ALJ offers the following analysis in support of the RFC assessment:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 416.967(c) except she can never climb ladders, ropes, or scaffolds; never work around hazards; and her right eye fine and gross visual acuity is limited to frequent.
>
> In making this finding, I have considered all symptoms to the extent which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and

---

[3] An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. *See* SSR 96-8p. "RFC is not the least an individual can do despite his or her limitations or restrictions, but the most." *Id.*

SSR 16-3p. I have also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927, and the effect of the claimant's obesity under SSR. 02-01p.

(ECF No. 11-2 at 21.)

Furthermore, the ALJ also discussed Plaintiff's subjective complaints and medical treatment Plaintiff received, noting:

> The claimant reported that she does not do anything all day. She indicated that she can stand for no more than an hour at a time; her hands become stuff; she has constant pain throughout her body; she has difficulty sleeping, but she spends the majority of the day . . . sitting at home watching television. She reported in her function report that she shops occasionally, prepares simple means, and can dress herself and use the toilet without difficulty. She also reported that she frequently drops her eating utensils. She also notes several limitations due to her seizure disorder; however, there is no indication that the claimant has experienced any activity since she restarted medication in November 2015.
>
> While the claimant alleges that she is unable to perform most any tasks due to seizure disorder, the only seizure activity documented in the file took place in November 2015 after the claimant had discontinued her medication for several years. A brain CT was performed that revealed no evidence of acute intracranial abnormality, the claimant was restarted on her medication in November 2015, and there are no further reported seizures in the file. As to the claimant's reported chronic pain and difficulty using her hands due to lupus and Sicca syndrome, while the record does reflect elevated sedimentation rates and C-reactive protein, the claimant's records consistently note no joint swelling, no tender points, fluent gait, good grip strength, and an ability to form a complete fist. Additionally, the claimant reported to her treating physician that she rarely has any issues with her hands.
>
> . . .
>
> Despite the numerous inconsistencies between the claimant's testimony and the treatment records, I find that the claimant's systemic lupus erythematosus, obesity, and Sicca syndrome could reasonably cause some limitations in the claimant's ability to perform work activity. As such, I have limited her to the performance of medium work . . . Taking Plaintiff's history of seizure disorder into account, the ALJ incorporated the limitations of no work around hazards and no climbing of ladders, ropes, or scaffolds into the RFC.
>
> After careful consideration of the evidence, I find that the determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . .

(ECF No. 11-2 at 21–23.)

As such, the court agrees with the Magistrate Judge's finding that the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSR 16- 3p." and "considered the opinion evidence and the effects of Plaintiff's obesity." (ECF No. 23 at 22 (citing ECF No. 11-2 at 21).) Consequently, the court finds that the record supports the ALJ's analysis of the evidence and RFC finding that Plaintiff could perform medium work.

## IV. CONCLUSION

After a thorough review of the Report and the record in this case, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 23) and **AFFIRMS** the Commissioner's final decision.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

January 14, 2020
Columbia, South Carolina